**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JAMES E. LAMBERT,**

      **Plaintiff,**

**v.**                            **Case No.: 3:10-cv-00199**

**MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,**

      **Defendant.**

**<u>MEMORANDUM OPINION</u>**

This is an action seeking review of the decision of the Commissioner of Social Security (hereinafter the "Commissioner") denying Claimant's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433. (Docket No. 1). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 7 and 8). The case is presently pending before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 16 and 18).

I.    **<u>Procedural History</u>**

Plaintiff, James E. Lambert (hereinafter "Claimant"), filed an application for DIB on May 22, 2006, alleging disability beginning March 15, 2006 due to a "back/left leg/shoulder injury" and "asthma/bronchitis."[1] (Tr. at 155-157 and 189). The

---

[1] Prior to this application, Claimant filed applications for DIB and SSI (Social Security Income) on February 19, 2004, alleging disability beginning March 15, 2001 due to a back disorder and shortness of breath. (*See* Tr. at 46-47). These applications were denied by decision dated November 16, 2005 and the Appeals Council denied review on March 14, 2006. (Tr. at 46-55 and 61). To avoid readjudication of the same time period, Claimant's present application alleges an onset of disability one day after the Appeals Council declined to review his prior applications, although Claimant continues to maintain that that he became disabled in 2001. (*See* Tr. at 25).

application was denied initially and upon reconsideration. (Tr. at 66 and 77). Thereafter, Claimant requested an administrative hearing, which was held on June 17, 2008 before the Honorable Andrew J. Chwalibog, Administrative Law Judge (hereinafter the "ALJ"). (Tr. at 18-40). By decision dated September 9, 2008, the ALJ determined that Claimant was not under a disability as defined by the Social Security Act. (Tr. at 11-17).

The ALJ's decision became the final decision of the Commissioner on December 30, 2009 when the Appeals Council denied Claimant's request for review. (Tr. at 1-3). On February 26, 2010, Claimant brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Docket No. 1). The Commissioner filed an Answer and a Transcript of the Administrative Proceedings and both parties have filed their Briefs in Support of Judgment on the Pleadings. (Docket Nos. 13, 14, 16, and 18).  Therefore, the case is ripe for resolution.

## II.     __Summary of the ALJ's Decision__

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability.  See *Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

The Social Security Regulations establish a five step sequential evaluation process for the adjudication of disability claims.  If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied.  20 C.F.R. § 404.1520.  The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).

If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits. However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to produce evidence, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined, as a preliminary matter, that Claimant met the insured status requirements of the Social Security Act through March 31, 2008. (Tr. at 13, Finding No. 1). The ALJ found that Claimant satisfied the

first step of the sequential evaluation because he had not engaged in substantial gainful activity since the date of the alleged onset of disability. (*Id.* at Finding No. 2). Under the second inquiry, the ALJ found that Claimant suffered from severe impairments of lumbar spine strain, joints strains and sprains, and chronic obstructive pulmonary disease (hereinafter "COPD"). (*Id.* at Finding No. 3). Nonetheless, at the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4). The ALJ then found that Claimant had the following residual functional capacity (hereinafter "RFC"):

> [L]ight work as defined in 20 C.F.R. 404.1567(b) except he should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and he should avoid concentrated exposure to temperature extremes, wetness, humidity, hazards, and vibration.

(Tr. at 14, Finding No. 5).

As a result, Claimant could not return to his past relevant employment as a laborer, which required him to perform "heavy" work. (Tr. at 16, Finding No. 6). The ALJ considered that Claimant was 46 years old on his date last insured, which defined him as a "younger individual age 18-49," and that he had the equivalent of a high school education and could communicate in English. (*Id.*, Finding Nos. 7 and 8). The ALJ noted that transferability of skills was not an issue because Claimant's past relevant work was unskilled.  (*Id.*, Finding No. 9).  In view of these factors and based on the evidence of record and the vocational expert's testimony, the ALJ concluded that Claimant could perform light-level jobs such as hand packer and machine tender and sedentary-level jobs such as bench work laborer and assembler. (*Id.*, Finding No. 10). On this basis, the ALJ determined that Claimant was not under a disability as defined by the Social Security Act.  (Tr. at 17, Finding No. 11).

### III.   Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying Claimant's application for benefits is supported by substantial evidence. In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined substantial evidence as the following:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  The decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d585, 589 (4th Cir. 2001).  The Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As such, the Court will not re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Id.*  The Court's obligation is to "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The ultimate question for the Court is whether the decision of the Commissioner is well-grounded, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

IV.    **Claimant's Background**

Claimant was born in 1961 and was 46 years old at the time of his administrative hearing. (Tr. at 23). He attended high school through the eleventh grade, obtained his General Education Diploma, and completed "business college." (Tr. at 24). He can speak and read English. (Tr. at 188). In the fifteen years preceding his alleged onset of disability, Claimant was employed as a cook/assistant manager at a restaurant, a steel laborer, a temporary worker, and a laborer at a lumber company. (Tr. at 190).

V.    **Relevant Medical Evidence**

The Court reviewed the Transcript of Proceedings in its entirety, including the medical records in evidence. To the extent that the Claimant's medical treatment and evaluations are relevant to the issues in dispute, the Court summarizes them below. As a preface to the discussion, the Court notes that several of the medical records included in the Transcript of Proceedings predate Claimant's alleged onset of disability and thus, do not bear on whether he was disabled during the relevant time period; however, the Court summarizes these records to provide a complete picture of Claimant's medical background. In addition, a portion of the medical records post-date the date on which Claimant was last insured; these records are mentioned to the extent that they are relevant to the issues in dispute.

A.    **Pre-Onset Records**

Claimant maintains that he originally injured his lower back in a work-related accident in 2001 and has experienced symptoms ever since. (*See* Tr. at 360).  On May 3, 2005, Claimant continued to complain of lower back pain with numbness and cramping in his left leg, yet he maintained an "active" lifestyle, giving the example of pressure washing his sister's house. (Tr. at 243). He took Aleve and "other medications

from other people" whenever he could "get them." (*Id.*).   He continued to smoke two packs of cigarettes daily, despite his history of asthma and COPD for which he was prescribed a Combivent inhaler and was advised to discontinue smoking. (*Id.*).   He also stated that he was lightheaded at times and that his blood pressure had been low. (*Id.*).

On January 18, 2006, Claimant presented to Three Rivers Medical Center Emergency Department complaining of chest pain beginning one day prior. (Tr. at 247). A portable examination of his chest was normal. (Tr. at 264). On examination, he had normal motion of his extremities, no long bone or joint deformity, and was adjudged intoxicated. (Tr. at 248). His drug screen was positive for benzodiazepines and he admitted to alcohol abuse. (*Id.*).  He was diagnosed with atypical chest pain and substance abuse, released in stable condition, and planned to return the following morning for inpatient treatment for substance abuse. (*Id.*).

The following day, Claimant was admitted to the Chemical Dependency Unit of Our Lady of Bellefonte Hospital, relating a 30 year history of alcohol abuse, that he lately drank approximately 20 cans of beer per day, as well as abused benzodiazepines and marijuana. (Tr. at 268). He reported that he currently lived with his girlfriend and received SSI income. (*Id.*). He was diagnosed with alcohol intoxication, continuous alcohol dependence, and continuous marijuana and benzodiazepine abuse. (Tr. at 269). His condition improved with treatment and he was to be discharged with follow-up at Prestera Mental Health Center. (*Id.*).

### B.    Prescribed Period Records

On July 26, 2006, Jules J. Barefoot, M.D., conducted a consultative examination. (Tr. at 270-273). Claimant complained of a history of asthma for which

he used an inhaler on a daily basis and dyspnea on exertion, although he continued to smoke one pack of cigarettes per day; he had no wheezing on his lung field examination and pulmonary function testing was normal. (Tr. at 272). He also complained of chronic low back pain and chronic left shoulder pain with elevation of his left arm, but he had no restrictions in his range of motion measurements involving his spine or extremities. (*Id.*). Dr. Barefoot stated that Claimant was able to sit, stand, move about and lift, carry, and handle objects; his gait appeared normal and he ambulated without an assistive device; and his ability to grossly and finely manipulate objects appeared normal. (Tr. at 273).

On August 4, 2006, Cindy Osborne, D.O., completed a physical RFC assessment at the request of the West Virginia Department of Disability Services (hereinafter "DDS"), concluding that the medical evidence established that Claimant had no exertional, postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 280-283). Dr. Osborne considered Claimant only partially credible, noting that Claimant's reported activities of daily living did not indicate any limitations, although none were expected based on the medical findings, which were negative and did not support any significant limitations. (Tr. at 284). He was prescribed medications for impairments which were non-severe. (*Id.*). Dr. Osborne disagreed with the November 16, 2005 ALJ's decision that Claimant had the RFC to perform only light-level work, noting that "[w]ith a normal exam and x-rays," there was "not any evidence to support any reduction at this time." (Tr. at 285).

On August 9, 2006, Lisa Tate, M.A., completed a consultative examination report at the request of DDS. (Tr. at 287-293). Claimant reported that he was arrested eight to nine time for driving under the influence and was in "alcohol treatment" four

times, the last of which occurred in 2004 when he was in prison for his "third offense" DUI. (Tr. at 288). He stated that he did not use drugs, but admitted to a history of marijuana abuse occurring twice per week from the time that he was a teenager until three to four months prior. (*Id.*). He was diagnosed with alcohol dependence; depressive disorder, NOS; and cannabis abuse in sustained remission. (Tr. at 290). She noted that abstinence from alcohol was needed to determine Claimant's actual level of depression. (*Id.*). On a daily basis, Claimant reported drinking his coffee and watching soap operas; Claimant also worked two or three times per week totaling 20 to 25 hours per week, cooked once per week, took out the trash twice per week, went to the store two times per week, and went to the post office once per week; and Claimant went to doctor's appointments every three to six months. (Tr. at 290-291). His concentration was moderately deficient based on the Digit Span score of 5 and his persistence and pace were within normal limits. (Tr. at 291). He appeared incapable to manage any benefits he may receive due to alcohol dependence. (Tr. at 292).

On August 21, 2006, G. David Allen, Ph.D., completed a psychiatric review technique at the request of DDS, finding that Claimant suffered from depressive disorder, NOS and cannabis abuse which were not severe and rendered him only mildly restricted in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. (Tr. at 295, 298, 303, and 305). There were no episodes of decompensation of extended duration. (Tr. at 305). Dr. Allen noted that the November 16, 2005 ALJ's decision did not find any psychological issues and that Claimant's credibility was questionable given that he professed an inability to work, yet currently worked 20 to 25 hours per week and that his mental status examination was within normal limits. (Tr. at 307).

On January 8, 2007, Jose Ricard, M.D., completed a general physical report for the West Virginia Department of Health and Human Resources ( "DHHR") in connection with Claimant's Medicaid application. (Tr. at 351-353). Dr. Ricard listed major diagnoses of ethanol abuse and chronic lower back pain and a minor diagnosis of cigarette smoker/COPD. (Tr. at 352). Dr. Ricard concluded that all work situations should be avoided for one month because Claimant needed alcohol rehabilitation. (*Id.*).

On March 1, 2007, Uma Reddy, M.D., completed a physical RFC assessment at the request of DDS, finding the following:

- Claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit with normal breaks for about 6 hours in an 8-hour workday; and push and/or pull an unlimited amount, other than as shown for lift and/or carry.

- Claimant could frequently climb ramps/stairs and occasionally climb a ladder/rope/scaffold, balance, stoop, kneel, crouch, and crawl.

- Claimant had no manipulative, visual, or communicative limitations.

- Claimant should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and hazards and even moderate exposure to fumes/odors/gases.

(Tr. at 321-324). Dr. Reddy also found Claimant to be only partially credible, noting that he was treated with pain medication for lower back pain as needed; that he was on medication for asthma and COPD, which were stable; that he had no recent hospitalizations; that his activities of daily living were "okay" for self care and pet care; that his complaints seem exaggerated when compared to the actual physical findings; and that considering the evidence as a whole, his RFC was reduced as noted and he had no listing-level limitations. (Tr. at 325). There was no treating or examining source statement in the file. (Tr. at 326).

On March 9, 2007, Bob Marinelli, Ed.D, completed a psychiatric review technique, noting that Claimant had non-severe depressive syndrome characterized by anhedonia (pervasive loss of interest in almost all activities), appetite disturbance with change in weight, sleep disturbance, and decreased energy, which rendered him only mildly restricted in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. (Tr. at 328, 331, and 338). There were no episodes of decompensation of extended duration. (Tr. at 338). His updated activities of daily living included watching television; doing chores; taking care of pets with the help of his girlfriend; not having problems with personal care or needing reminders for personal care or medications; preparing simple meals; taking out garbage; mowing yard; going outside almost every day, including being able to go outside alone; shopping once per month for two to three hours; handling money; not fishing or riding motorcycles often due to pain; going to "cook outs;" talking on phone and socializing, although feeling "grouchy sometimes;" and not having problems with memory, concentration, understanding, following instructions, or getting along with others, but not handling stress or changes in routine well. (Tr. at 340).

### C.    Post-Insured Records

Claimant saw chiropractic physician Jason A. Moore two or three times per week beginning on September 15, 2008, approximately one week after the ALJ's decision, through October 17, 2008. (Tr. at 360-374). On his first visit, Claimant stated that he was in constant pain with numbness in his low back. (Tr. at 360). Claimant responded favorably to treatment, rating his low back pain and neck pain as "5" and his left hip pain as "3" on a scale of "0-10" on the date of his final visit, as opposed to his initial rating of "7" in each area. (Tr. at 374).

On March 31, 2008, the West Virginia Department of Health and Human Resources granted Claimant's Medicaid application, approving him for SSI related Medicaid benefits.[2] (Tr. at 375). His case was set to be reevaluated in November 2008, unless his DHHR reviewer determined that circumstances warranted an earlier evaluation. (*Id.*).

On October 28, 2008, Dr. Moore completed a physical RFC evaluation, noting the following:

- Claimant could lift and/or carry 10 pounds occasionally and frequently; stand and/or walk for 4 hours and sit for 2 hours in an 8-hour workday; and was limited in pushing/pulling with his lower extremities.

- Claimant could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb a ladder/rope/scaffold.

- Claimant had no manipulative, communicative, or environmental limitations.

(Tr. at 387).

## VI.   <u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant argues that the Commissioner's Decision is not supported by substantial evidence because the ALJ (1) erroneously assessed Claimant's credibility and failed to properly develop or consider Claimant's pain as required under the Regulations, (2) failed to evaluate Claimant's disability under the combination of impairments Listing, and (3) erred in rejecting the opinion of Claimant's treating physician. (Pl.'s Br. at 9-13).

The Commissioner, on the other hand, contends that the ALJ properly evaluated the credibility of Claimant's subjective complaints, that the ALJ considered

---

[2] SSI-Related Medicaid provides coverage to aged, blind or disabled individuals who do not qualify financially for SSI, but qualify for SSI-Related Medicaid coverage by "spending down" income to an established income level by use of incurred medical expenses and who have assets within established limits. West Virginia Department of Health and Human Resources website.

the combined effect of Claimant's impairments, and that the treating physician's opinions do not undermine the ALJ's decision. (Def.'s Br. at 8-18).

Having thoroughly considered the evidence and the arguments of counsel, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

## VII.   <u>Analysis</u>

### A.  **Pain and Credibility Assessment**

Claimant asserts that the ALJ clearly had no basis for finding that Claimant was not credible. (Pl.'s Br. at 9). He argues that despite the abundance of objective medical documentation supporting his consistently expressed complaints, the ALJ failed to inquire fully into his alleged lumbar spine strain, joints strains and sprains, and COPD as they related to pain. (Pl.'s Br. at 10). The Court does not find these arguments to be persuasive.

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, pursuant to 20 C.F.R. §§ 404.1529 and 416.929, in order to determine their limiting effects on a claimant.  First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain.  SSR 96-7P.  Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must assess the credibility of any statements made by a claimant to support the alleged

disabling effects. The Ruling sets forth the factors that the ALJ must consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the credibility determination must be based on a consideration of all of the evidence in the case record. *Id.*

When evaluating whether an ALJ's credibility determinations are supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessments for those of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusions. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *See Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990). Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976).

Here, the Court finds that the ALJ's credibility assessment of Claimant was consistent with the applicable regulation, case law, and Social Security Rulings and was supported by substantial evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Significant evidence existed in the record that Claimant's complaints of pain did not correlate with his level of activity and functional abilities.

In this case, the ALJ determined that Claimant had medically determinable impairments that could cause his alleged symptoms; therefore, the ALJ considered

Claimant's daily activities; the location, duration, frequency, and intensity of his pain and other symptoms; precipitating and aggravating factors; his medication and side effects, as well as other forms of relief and treatment; and other factors concerning functional limitations related to pain or other symptoms. (Tr. at 14-15); 20 C.F.R. 20 C.F.R. § 404.1529(c)(3). The ALJ considered Claimant's reported activities, such as caring for his personal needs; going shopping and going out to eat with his sister; helping his sister clean her kitchen and do laundry; and drinking alcohol once or twice per week, as much alcohol as he could drink when he could afford it. (Tr. at 15). The ALJ also noted Claimant's testimony that he stopped working because of problems breathing, back pain, and high blood pressure, and considered each alleged impairment in turn. (*Id.*).   Related to Claimant's problems breathing, the ALJ discussed Claimant's complaints that his COPD was worse in the heat, that he used all of the medication in his inhaler in one week, took Advair twice per day, and sat and relaxed, which allowed him to get up and move again after twenty to thirty minutes. (*Id.*). In addition, the ALJ considered Claimant's statements that he had two discs "out" in his back which created "pinched nerves" in his legs, that he beat the sides of his legs to "get the cramps out" when his experienced leg spasms, that he took more than the prescribed dosage of Motrin 800 mg and Flexiril each day because of his pain level, and that he had participated in physical therapy and saw a chiropractor, but did not wear a back brace. (*Id.*). Finally, the ALJ considered that Claimant did not take medication for alleged hypertension. (*Id.*).

The Court disagrees with Claimant's assertion that "the record does not contain any evidence to suggest that [Claimant] is anything less than fully credible." (Pl.'s Br. at 9). The record documents Claimant's history of serious substance abuse. (Tr. at 248

and 268-269, 288). In addition, the record documents that Claimant's reported activities were inconsistent with his subjective complaints. For instance, he complained that he was unable to work due, in part, to low back and shoulder pain, but he maintained an "active lifestyle" and managed to work 20 to 25 hours per week; he also complained of problems breathing due to COPD and asthma, but continued to smoke one to two packs of cigarettes per day. (Tr. at 243, 340, 272, and 290). In addition, Dr. Osborne, Dr. Allen, and Dr. Reddy all concluded that Claimant was not fully credible. (Tr. at 284, 307, 325). The opinions of these agency consultants provide an additional basis for the ALJ's credibility determination. Dr. Osborne and Dr. Reddy both concluded that Claimant was only partially credible, because the severity of his subjective complaints simply did not correspond with his objective medical findings, daily activities, and quantity and type of requisite medical intervention. Dr. Reddy opined that Claimant's complaints were exaggerated; Dr. Osborne disagreed with a prior determination that limited Claimant to light exertional work. They both felt Claimant's ability to function was much less restricted than alleged by Claimant.

In addition to these issues, the ALJ evaluated Claimant's demeanor as a witness; the fact that he testified that he received a "medical card" in September 2007, yet there was no record of treatment related to his complaints between September 2006 and June 2008; and that he had a history of substance abuse, including alcohol dependence and misuse of pain medication, which the ALJ found to be indicative of a polysubstance disorder with potential drug seeking behavior. Ultimately, based on all of the above considerations, the ALJ concluded that Claimant's credibility was poor and that his demeanor during the hearing was consistent with the limitations established in his RFC. (*Id.*).

The Court finds that Claimant's argument that the ALJ failed to fully inquire into his symptoms and pain is equally without merit. In addition to reviewing the medical evidence and other documentation provided by Claimant, the ALJ thoroughly questioned Claimant about each of his alleged impairments during the administrative hearing, including the symptoms and pain associated with the conditions; the medications, side effects, and other forms of treatment; his activities of daily living; and other factors. (Tr. at 25-35). Claimant fails to assert that the ALJ neglected to investigate or develop the record as to any issue raised by the medical evidence or Claimant's testimony.

Based on all of the above, the Court finds that the ALJ properly weighed Claimant's subjective complaints of pain in keeping with the applicable regulations, case law, and social security rulings and that his findings are supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2008); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

### B. Combination of Impairments

Claimant next argues that the ALJ failed to properly develop or consider the combined effects of Claimant's impairments. (Pl.'s Br. at 11-12). However, despite Claimant's conclusory statement that the combined effects of his impairments render him totally disabled, he fails to cite to a single Listing which his combined impairments equal in severity and fails to set forth a single valid argument establishing that he is unable to engage in substantial gainful activity.

Undoubtedly, the ALJ was required to consider the combined, synergistic effect of all of Claimant's medically determinable impairments, severe and non-severe, to accurately evaluate the extent of their resulting limitations on Claimant. *Walker v.*

*Bowen,* 889 F.2d 47 (4th Cir. 1989).  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974).  The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  *Id.*  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed.  *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). As the Fourth Circuit Court of Appeals stated in *Walker,* "[i]t is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity." *Walker v. Bowen, supra* at 50.

Here, the ALJ fulfilled his obligation to evaluate Claimant's impairments, separately and in combination, specifically addressing how they affected Claimant's functional capacity. First, the ALJ considered Claimant's impairments alone and in combination at the third step of his analysis, evaluating the medical evidence in comparison to the Listings related to the musculoskeletal and respiratory systems. (Tr. at 14). The ALJ ultimately determined that Claimant did not have an impairment or combination of impairments that equaled in severity any listed impairment, as no treating or examining physician made findings that would constitute equivalency to any listed impairment. (*Id.*). The ALJ then proceeded to evaluate Claimant's RFC given his combination of impairments. The ALJ noted that Claimant's pulmonary function studies were normal, but he did have a positive straight leg raising test on the left side

with lumbar spasm; however, despite the combined effects of any joint and back sprains or strains, COPD, and any other alleged conditions, Claimant was able to stand, walk, sit, and squat without difficulty, and his own testimony indicated that he was to attend to his personal needs, shop, help his sister, and engage in other activities. (Tr. at 15). Nonetheless, the ALJ liberally incorporated the combined effects of Claimant's impairments into his RFC finding, limiting him to light work with additional nonexertional restrictions, such as that Claimant should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.[3] (Tr. at 14).

Therefore, the Court finds that the ALJ properly considered Claimant's impairments in combination and that his decision is supported by substantial evidence.

### C. Treating Physician's Opinion

In his final assertion of error, Claimant argues that the ALJ improperly substituted his opinion for the opinion of Claimant's long-time treating physician, Dr. Moore, noting that Dr. Moore found Claimant capable of lifting and carrying only 10 pounds and that Dr. Moore's opinion that Claimant could not work was shared by Dr. Ricard who completed an independent medical assessment. (Pl.'s Br. at 12-13).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical

---

[3] As noted by the ALJ, the agency medical consultants opined that Claimant was capable of medium work, but the ALJ gave greater weight to the previous ALJ decision determining that Claimant was capable of light work, finding that the evidence failed to establish that his condition had worsened or improved since the previous decision was issued. (Tr. at 15).

- 19 -

and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 404.1527(d)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court need only review the record as a whole and corroborate that the Commissioner's conclusions are rational and based upon substantial evidence.

Claimant's arguments regarding Drs. Moore and Ricard fail for several reasons. At the outset, the Court notes that Dr. Moore began treating Claimant on September 15, 2008, approximately one week after the ALJ's decision. (Tr. at 360). Accordingly, the ALJ never reviewed Dr. Moore's opinions, much less did he "substitute his own opinions for that of [Claimant's] long time treating physician." Rather, Dr. Moore's records were received by the Appeals Council as additional evidence in support of Claimant's request for review of the ALJ's decision. (Tr. at 4). Nonetheless, at this point, the Court will consider the evidence in determining whether the ALJ's decision is supported by substantial evidence.[4] *Wilkins v. Secretary, Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Dr. Moore began treating Claimant and rendered his RFC finding that Claimant could lift and/or carry 10 pounds over five months and nearly seven months

---

[4] "In the case where the Appeals Council denies a request for review after considering additional evidence offered by the claimant for the first time to the Appeals Council, the transcript of the administrative record certified to the court by the Commissioner must include the additional evidence submitted to the Appeals Council, and this evidence must be considered by the court in determining whether the ALJ's decision is supported by substantial evidence." *Adkins v. Barnhart*, 2003 WL 21105103, *5 (S.D.W.Va. 2003).

subsequent to the date that he was last insured for disability benefits, respectively. It is well established that to qualify for DIB, it is Claimant's burden to prove that he became disabled prior to the expiration of his insured status. *Johnson v. Barnhart*, 434 F.3d 650, 655-656 (4th Cir. 2005); 20 C.F.R. §§ 404.101(a), 404.131(a) (2008). Dr. Moore did not indicate in his RFC assessment that his findings correlated to Claimant's RFC prior to his date last insured. However, assuming *arguendo* that Dr. Moore's opinions are material to the relevant time period, they are markedly inconsistent with the medical opinions rendered at that time. For instance, as noted, Dr. Moore opined that Claimant could perform sedentary work, carrying a maximum of 10 pounds. (Tr. at 387). Yet, during the pertinent time period, on August 4, 2006, Dr. Osborne concluded that Claimant had no exertional limitations whatsoever and on March 1, 2007, Dr. Reddy concluded that Claimant was capable of performing medium work, defined as lifting 50 pounds occasionally and 25 pounds frequently. (Tr. at 280 and 321). In addition, Dr. Moore stated no basis for his RFC findings; rather, his RFC assessment merely consists of check-off boxes with no accompanying explanation. Drs. Osborne and Reddy, on the other hand, thoroughly supported their findings, documenting their assessments of Claimant's credibility and noting the evidence that they considered in rendering their opinions. (Tr. at 284, 286, 325, and 327). Dr. Moore's conclusions are dubious to the extent that they may have relied in whole or in part on Claimant's subjective complaints. As discussed,  Claimant was deemed to be less than fully credible by numerous medical providers, the ALJ, and this Court. Therefore, it is evident that Dr. Moore's RFC opinion is unsupported and inconsistent with substantial evidence of Claimant's RFC during the relevant time period, May 22, 2006 through March 31, 2008.

Claimant further argues that the ALJ improperly disregarded the shared opinion of Drs. Moore and Ricard that Claimant was unable to work. (Pl.'s Br. at 12). However, Dr. Moore never concluded that Claimant was unable to work. Rather, as noted above, Dr. Moore found that Claimant was capable of sedentary work with additional exertional limitations. (Tr. at 387). However, Dr. Ricard did, in fact, conclude during the relevant time period that Claimant should avoid all work situations for one month because he needed alcohol rehabilitation. (Tr. at 352). In his explanation for finding that Claimant was unable to work and in his summary of conclusions, Dr. Ricard noted only that Claimant required treatment for alcohol abuse; Dr. Ricard did not indicate that Claimant was unable to work due, in any part, to his back pain or any other claimed impairments. (Tr. at 353). The ALJ considered this evidence; however, noting that Claimant could not receive benefits if alcohol use was material to the finding of disability, the ALJ proceeded to analyze whether Claimant was disabled absent his alcohol dependence. (Tr. at 13). *See* 42 U.S.C. § 423(d)(2)(C). The Court finds that the ALJ properly considered Dr. Ricard's opinion and that the ALJ's findings do not conflict with those of Dr. Ricard absent consideration of Claimant's alcohol abuse. Further, the regulations governing SSA disability determinations provide that a decision by any other governmental agency about whether and individual is disabled is based on its rules and are not binding on the SSA. 20 C.F.R. § 404.1504.

Based on all of the above, the Court finds that the ALJ's treatment of the medical opinions was supported by substantial evidence.

**VIII.**  <u>**Conclusion**</u>

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED:** March 4, 2011.

_____
Cheryl A.  Eifert
United States Magistrate Judge